# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**TERESA ANN TODD,**

    **Plaintiff,**

**v.**                                                    **Civil Action No. 2:16-cv-06184**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and Defendant's Brief in Support of Defendant's Decision (ECF No. 11). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

Teresa Ann Todd, Claimant, applied for disability insurance benefits (DIB) on May 7, 2013, alleging disability beginning on March 24, 2012. The claim was denied initially on July 11, 2013, and upon reconsideration on December 24, 2013. On January 13, 2014, Claimant made a request for a hearing before an Administrative Law Judge (ALJ). On February 18, 2015, Claimant appeared in Mount Hope, West Virginia, for a video hearing. An Administrative Law Judge (ALJ) in Charleston, West Virginia, presided over the video hearing. The ALJ denied Claimant's application on March 19, 2015. Claimant's request for a review by the Appeals Council (AC) was denied on June 21, 2016. Subsequently, Claimant brought the present action requesting this Court to remand the decision of the Commissioner "for a proper evaluation of the evidence" (ECF No. 10).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2016).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2016).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of March 24, 2012, through her date last insured of December 31, 2014 (Tr. at 53). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease; degenerative joint disease of the knees (status-post surgery); CTS (carpal tunnel syndrome status-post release), asthma, hemochromatosis, obesity, major depressive disorder, degenerative disc disease of the cervical and lumbar spines and anxiety (Tr. at 54). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 56). The ALJ then found that Claimant has a residual functional capacity to perform sedentary work[1] (Tr. at 58). However, due to limitations affecting Claimant's ability to perform the requirements of representative occupations, the Vocational Expert (VE) testified at the hearing that representative occupations at the light and sedentary levels of work could be performed (Tr. at 68) As a result, the ALJ concluded that Claimant could perform jobs such as information clerk, interviewing clerk, inspector and sorter. (*Id.*) On this basis, benefits were denied (Tr. at 68-69).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was

---

[1] The ALJ ordered that Claimant can frequently climb ramps/stairs, balance, stoop, kneel, crouch or crawl; never climb ladders/ropes/scaffolds; frequently handle/finger with both hands; occasional use of foot controls with the left lower extremity; avoid unprotected heights, dust/fumes/gases; extreme cold and vibrations. Mentally, she is able to have brief/incidental contact with the general public but should not tandem work or work in close coordination with others (Tr. at 58).

defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Teresa Ann Todd (hereinafter Claimant) was born on November 8, 1972, and was 40 years old at the time of filing her application. Claimant has a high school education and lives with her husband.

### The Medical Record

The Court has reviewed all evidence of record and will address those portions which are relevant to the issues raised by Claimant.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred when he failed to give substantial weight to the opinions of Donald C. Newell, Jr., D.O., and Roberta Carte, RN, FNP, regarding Claimant's residual functional capacity (RFC) (ECF No. 10). Claimant avers that the ALJ erred when he found that

4

Claimant "could frequently handle and finger performing gross and fine manipulation bilaterally" because the finding is not supported by substantial evidence.  (*Id.*)  Claimant asserts that the ALJ failed to include a prior ALJ's assessment of Claimant's ability to perform sedentary work without alternating between standing and sitting.

Defendant asserts that the ALJ was not compelled to give controlling weight to the opinion of Nurse Practitioner Carte (ECF No. 11).  Defendant avers that the ALJ properly assessed the medical opinions in the record based upon specialty or area of expertise and relevant supporting evidence.  (*Id.*)  Defendant avers that the present ALJ "had the benefit of new evidence" and that "such new evidence drove a slightly different functional capacity assessment."  (*Id.*)  Defendant asserts that the ALJ did not have to include limitations he declined to assess in questioning the Vocational Expert (VE) about available jobs.

<u>Medical Opinions</u>

On August 2010, Claimant underwent an EMG by Barry K. Vaught, M.D., pursuant to Roberta Carte, FNP's referral (Tr. at 595-596).  Dr. Vaught reported "There is electrophysiologic evidence for median mononeuropathy at the bilateral wrists consistent with carpal tunnel syndrome" (Tr. at 596).

On May 3, 2011, Brett Whitfield, M.D., performed an orthopedic consultation of Claimant (Tr. at 582-587).  Dr. Whitfield's  assessment of  Claimant stated that she has mild to moderate carpal tunnel syndrome and that her right hand is clinically worse than her left hand (Tr. at 583).  Dr. Whitfield stated that Claimant's carpal tunnel syndrome "is not severe at this point and therefore I do not feel that there is a role for splinting" (Tr. at 584).

On August 2, 2011, Dr. Whitfield examined Claimant and reported that Claimant "has had no relief of her carpal tunnel symptoms after using the splints" (Tr. at 585).  Claimant reported

that she is unable to sleep in the splints and that she does not wear them during the day because "she feels confined." (*Id.*) Dr. Whitfield stated that Claimant's options "are either to continue to live with the carpal tunnel syndrome or to have it fixed" by having carpal tunnel release surgery. (Tr. at 586). On September 6, 2011, Dr. Whitfield saw Claimant after right carpal tunnel release surgery. Dr. Whitfield reported that Claimant "has had complete resolution of her paresthesias" (Tr. at 588).

On October 4, 2011, Claimant returned for a re-evaluation of her right hand by Dr. Whitfield (Tr. at 589-591). Claimant reported that she has no further paresthesias and is able to use the hand better (Tr. at 589). Claimant reported "a new problem with back pain" from being in multiple automobile accidents. (*Id.*) Claimant reported experiencing more pain when sitting or lying down.

On October 27, 2011, an MRI was taken of Claimant's lumbar spine (Tr. at 592). The Diagnostic Imaging Report reflected that "There is no evidence of marrow replacing process or macro fracture" (Tr. at 593). The diagnostic impression stated "Broad-based disc displacement at C4-C5 and C5-6 that are noncompressive. C5-C6 right disc osteophyte complex with right side mild pre-foraminal recess extension" (Tr. at 593-594).

On May 31, 2012, Claimant saw Dr. Whitfield for complaints about her left hip (Tr. at 330-334). Claimant self-reported that she was treated at Shriner's Hospital with a cast (Tr. at 330). Dr. Whitfield noted that "It is likely that she had some type of congenital hip dysplasia. She has also found that over the years she has developed a lot of popping and cracking as well as clicking of her kneecaps. She does also feel as though occasionally the kneecaps dislocate laterally." (*Id.*) Dr. Whitfield noted that Claimant does not use braces and occasionally uses Advil.

Dr. Whitfield examined Claimant and reported that Claimant's range of motion in her left

hip during external rotation was "25 degrees compared to 45 degrees contralateral" and during internal rotation Claimant's range of motion in her left hip was "10 degrees compared to 30 degrees contralateral" (Tr. at 331). Dr. Whitfield's office notes reflected that Claimant had an MRI of her left knee. The MRI reflected "There is severe arthritic change about the patella noted on axial view. Medial and lateral compartments demonstrate moderate degenerative changes with small osteophytes. There were no meniscal tears" (Tr. at 332). Dr. Whitfield's assessment found that Claimant has a history of congenital hip dysplasia in the left hip, bilateral severe lateral tracking with patellofemoral arthritis bilateral knees and moderate medial and lateral compartmental osteoarthritis in her left knee. (*Id.*) Dr. Whitfield's treatment plan states the following:

> I discussed with Teresa that she has a very difficult problem in that she is very young with a difficult issue. She has developed significant arthritic changes due to lateral tracking of the patella. At this point it is uncertain whether or not a patella tracking procedure such as a McKay or Fulkerson could give her relief as she has worn out quite a bit of the cartilage underneath the kneecap. She is also quite young for a knee replacement. At this point I would like to try a brace to try to realign the patella as in trying to relieve the pressure on the knee. We will try these endeavors. If these do not give her relief then she will return and we will start cortisone and Synvisc (Tr. at 332).

On December 30, 2013, Roberta Carte, RN, FNP, completed a Medical Assessment of Ability to do Work-Related Activities (Physical) of Claimant and Donald C. Newell, Jr., D.O., Claimant's primary care physician, signed the form (Tr. at 482-485). The Medical Assessment form reflected that Claimant could lift/carry up to 10 pounds (Tr. at 482). In an 8 hour workday, she can stand and/or walk a total of 1 to 2 hours but can only do so for 30 minutes without interruption (Tr. at 483). In an 8 hour workday, she can sit a total of 1 to 2 hours but can only do so for 30 minutes without interruption. (*Id.*) The Medical Assessment form reported that Claimant experiences chronic lumbar pain and "knee problems." The Medical Assessment form stated that

Claimant can never stoop due to her knee problems.  The Medical Assessment form stated that Claimant's handling and feeling, among other physical functions, were affected by carpal tunnel syndrome but the form did not provide what medical findings supported the assessment (Tr. at 484).

On approximately July 11, 2013, Curtis Withrow, M.D., completed a Disability Determination Explanation for Claimant's DIB application at the initial level (Tr. at 145-156).  Dr. Withrow diagnosed Claimant with the impairments of osteoarthritis and allied disorders, affective disorders and anxiety disorders (Tr. at 149).  Dr. Withrow's Physical Residual Functional Capacity assessment (RFC) of Claimant found that Claimant could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds. Claimant could stand and/or walk for 4 hours. Dr. Withrow found that Claimant could sit with normal breaks for 6 hours out of an 8-hour workday (Tr. at 165).  Dr. Withrow found that Claimant is limited in her ability to push and pull including operation of both hand and foot controls.  (*Id.*)   Dr. Withrow opined that Claimant is not disabled and has the ability to perform sedentary work (Tr. at 155, 169).

On September 10, 2013, Serafino S. Maducdoc, Jr., M.D., performed a Disability Determination Examination of Claimant (Tr. at 347-352).  Claimant's chief complaints were of chronic anxiety and depression, panic attacks and pain in the left knee and hip (Tr. at 347).  Dr. Maducdoc's impression found that Claimant has chronic anxiety, depression, panic attacks, hemochromatosis and left hip dysplasia status-post surgery of her left hip and left knee (Tr. at 350).  Dr. Maducdoc's prognosis of Claimant was "poor."  (*Id.*)  Dr. Maducdoc's summary states that Claimant "had surgery for her left hip and knee from left hip dysplasia." (*Id.*)

Claimant's treating physician, Jessica F. Swank, M.D., Access Health Rural Acres, assessed Claimant on approximately November 6, 2014 (Tr. at 544).   Dr. Swank assessed

Claimant's degenerative joint disease in her back as deteriorated. On approximately December 5, 2014, Dr. Swank's office notes reflect that Claimant was experiencing chronic pain in her hips and knees (Tr. at 546). On December 5, 2014, Dr. Swank added congenital hip dysplasia on the left to Claimant's "problem list update" (Tr. at 549). Dr. Swank's assessment of Claimant reflected that her degenerative joint disease in her back and her congenital hip dysplasia on her left had deteriorated. (*Id.*)

On approximately January 26, 2015, Dr. Swank's "pain assessment" of Claimant stated "The patient is not currently experiencing pain" and "The patient does not experience chronic pain" (Tr. at 551). Dr. Swank's assessment on January 26, 2015, reflected that Claimant's dizziness, hypoglycemia, left knee degenerative joint disease, right foot pain and carpal tunnel syndrome were removed from Claimant's "Problem List" due to the medical conditions being "resolved" (Tr. at 553).

<u>Claimant's Testimony</u>

At the hearing on February 18, 2015, Claimant testified that she sometimes experiences a sharp pain shooting through her right hand. As for her left hand which she did not have surgery, Claimant testified that when holding something for a period of time her left hand "will get into a shaky mode" to the point where she has to let go. Claimant's left hand goes numb. She testified that she has to release whatever she is holding in order to get feeling back in her left hand. Claimant testified to experiencing more pain in her right hand.

Additionally, Claimant testified at the February 18, 2015 hearing that she experienced limitations as a result of her low back pain. Claimant testified that she can sit for a maximum of 30 minutes before her lower back and butt begin to go numb. She testified that she can stand or walk for approximately 30 minutes before she starts to experience pain in the lower part of her

back and left knee.

<u>Vocational Expert</u>

At the February 18, 2015 hearing, Claimant's Attorney instructed the Vocational Expert (VE) to consider if the hypothetical person described by the ALJ had the additional limitation of a sit, stand option that would require the individual to sit for no more than 30 minutes at a time and then stand for no more than 30 minutes at a time and alternate between sitting and standing. Claimant's Attorney asked the VE if the additional limitation would have an effect on any of the jobs the VE indicated Claimant could perform. The VE testified that "If you have to alternate your position that much, I don't think you're going to be very functional in the workplace."

<u>Prior Disability Findings</u>

Claimant's previous application was denied on March 23, 2012.[2]  The prior decision addressed the time period from Claimant's alleged onset date of February 9, 2010, through Claimant's date last insured of December 31, 2014[3] (Tr. at 121).  The ALJ's decision held that Claimant had the severe impairments of degenerative disc disease, carpal tunnel syndrome with status post release, obesity, major depressive disorder and anxiety (Tr. at 121).  However, the ALJ held that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (Tr. at 122).  The ALJ found that Claimant had the residual functional capacity to perform less than the full range of light work except Claimant would be limited to occasional crouching, kneeling, stooping, balancing and climbing of stairs and ramps (Tr. at 124).  Claimant could perform no climbing of ladders, ropes or scaffolds and no crawling.  She should avoid concentrated exposure to extreme cold, vibration

---

[2]  Claimant's prior Title II application filed on March 12, 2010, alleged disability beginning February 9, 2010 (Tr. at 119-137).
[3]   Claimant's earnings record shows that Claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2014 (Tr. at 119).

and hazards. She could perform no more than occasional fine manipulation with the left hand. She would need to alternate standing to sitting positions every 30 minutes. She could have only occasional interaction with co-workers and no interaction with the public. (*Id.*) The ALJ held that Claimant could perform jobs at light exertion such as a shirt folding machine operator and a filler (Tr. at 131). Additionally, the ALJ held that Claimant could perform jobs at sedentary exertion such as a sorter, polisher and pager-cleaning jobs (Tr. at 132). On this basis, benefits were denied. (*Id.*)

Claimant did not appeal the March 23, 2012 decision in her prior application for DIB. Instead, Claimant filed a new application for DIB on May 7, 2013, alleging disability beginning March 24, 2012, the day after the prior ALJ's order.

<u>Weight Given to the Prior Assessment</u>

In the present case, the ALJ addressed the prior ALJ decision and gave the prior assessment "significant weight." However, the ALJ held that new and material evidence submitted after the prior limitations were given, further limit Claimant (Tr. at 60).

<u>Weight of Medical Opinions</u>

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical

signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. §§ 416.927(d)(2), 404.1527 (2016).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 416.927(d)(2), 404.1527 (2016). Under §§ 416.927(d)(2)(ii) and 404.1527, the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(c)(2)(3), (4) and (5), 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good

reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 416.927(d)(2), 404.1527(c)(2).

Under §§ 416.927(d)(1), 404.1527(b) and (c) more weight generally is given to an examiner than to a non-examiner.  Sections 416.927(d)(2), 404.1527(c) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act.  *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005).  The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2) and 416.927.  If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight.  *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig v. Chater*, 76 F.3d 585, at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work.  These decisions are solely

the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the

14

administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*)  Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c) of §§ 404.1527 and 416.927.[4]

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits.  'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

Acquiescence Ruling 00-1(4)

In the prior decision dated March 23, 2012, an ALJ found that Claimant could perform no more than occasional fine manipulation with the left hand due to carpal tunnel syndrome (Tr. at 124).  In the March 19, 2015 decision, the ALJ found that Claimant could "frequently handle/finger with both hands" (Tr. at 58).  Additionally, the ALJ in the March 23, 2012, decision found that Claimant's impairments require limitations including the need to alternate sitting and standing every 30 minutes (Tr. at 124).  In the March 19, 2015 decision, the ALJ did not give a sit/stand limitation (Tr. at 58).

Claimant argues that the ALJ in the present case should have adopted the limitations found

---

[4]  Medical opinions are given weight in consideration of the following factors:  examining relationship, treatment relationship, length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization and other factors.

by a different ALJ in a prior decision (ECF No. 10).  Claimant avers that the ALJ failed to follow

Acquiescence Ruling 1-5-4-66 implementing *Albright v. Commissioner of the Social Security

Administration*, 174 F.3d 473 (4th Cir. 1999).  Claimant asserts:

> The plaintiff's need to alternate sitting and standing and limitation
> on the ability to perform only occasional fine manipulation with the
> left hand reflect serious limitations on the plaintiff's ability to
> perform work at the sedentary exertional level.  SSR 96-9p requires
> that these limitations be considered in determining the plaintiff's
> residual functional capacity and ability to do jobs found in
> significant numbers in the National Economy (ECF No. 10).

Social Security Acquiescence Ruling 94-2(4) applies only to claimants residing within the

geographical confines of the Fourth Circuit.[5]

In *Albright*, an ALJ denied Albright's disability application on May 28, 1992.  Albright did

not appeal the adverse decision.  In November and December 1992, Albright filed disability

applications which the Social Security Commissioner considered to be new claims, relating to

Albright's condition subsequent to the prior adjudication, *i.e.*, from May 29, 1992, onward.  On

October 26, 1994, a second ALJ denied Albright's disability applications relying on the Fourth

Circuit's holding in *Lively v. Secretary of HHS*, 820 F.2d 1391 (4th Cir. 1987).

In *Lively*, the court declined to determine if the second ALJ finding is supported by

substantial evidence.  A discussion on an "exception" to 405(h) was not necessary in *Lively*

because there was no previously unconsidered evidence in the subsequent case that had come to

light, 405(h) does not provide an exception. Section 405(h) states that the findings and decision of

---

[5]  AR 94-2(4) was rescinded on January 12, 2000 by AR 00-1(4).  The Ruling applies only to disability findings in cases involving claimants who reside in Maryland, North Carolina, South Carolina, Virginia or West Virginia at the time of the determination or decision on the subsequent claim at the initial, reconsideration, Administrative Law Judge hearing or Appeals Council level.  It applies only to a finding regarding a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, or a finding required under the evaluation process for determining disability under 20 CFR 404.1578, as appropriate, which was made in a final decision by an Administrative Law Judge or the Appeals Council on a prior disability claim.

the Social Security Commissioner after a hearing shall be binding upon all individuals who were parties to such hearing.

The Court in *Lively* found:

> It is by now well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases. *Benko v. Schweiker*, 551 F. Supp. 698, 701 (D. N.H. 1982). Congress has clearly provided by statute that *res judicata* prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final, 42 U.S.C. § 405(h), and the courts have readily applied *res judicata* to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding. *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987).

In *Albright*, the Court stated that "When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision… on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding."

The Court in *Albright* held that "The SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." The Fourth Circuit found that "The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition." Therefore, AR 94-2(4) provides an exception to the general rule that separate claims are to be considered separately. This exception essentially merges two claims into one resulting in a second decision finding the same sequential evaluation findings as previously determined in a denial of a claimant's previous disability application.

The second ALJ concluded that, absent new and material evidence regarding the severity of the alleged impairment, AR 94-2(4) dictated that Albright's claims be denied again. However, the ALJ found that new and material evidence submitted after the prior ALJ's decision limited Claimant more since the date of the prior ALJ's decision. Therefore, based upon the new and material evidence the ALJ found Claimant to be more limited in the range of work Claimant could perform. The ALJ found that Claimant could perform sedentary work instead of adopting the prior ALJ's assessment of light work with a sit-stand option.

The ALJ found that the new and material evidence supported a severe knee impairment. Claimant first reported hip and knee pain to her primary care provider in December 2014. Although Claimant did not experience knee pain in January 2015, the ALJ found that Claimant "suffers from a history of degenerative disc disease and degenerative joint disease of the knees/left hip (status-post surgery as an infant for hip dysplasia)" (Tr. at 54). The ALJ reduced Claimant's work level. At first glance it may appear that the ALJ removed Claimant's sit-stand option, however, decreasing the work level to sedentary provides that the work is primarily performed in the seated position. Pursuant to AR 00-1(4), the ALJ was not bound to find Claimant capable of light work with a sit-stand option due to new evidence before the ALJ.[6]

---

[6]    Under the AR 00-1(4) discussed in *Lively*, an adjudicator was required to adopt a finding regarding a claimant's RFC or other finding required at a step of sequential evaluation, which was made in a final decision by an ALJ or the AC on a prior disability claim, in determining disability with respect to an unadjudicated period involved in a subsequent claim, unless there was new and material evidence relating to such prior finding. Therefore, unless there was new and material evidence which, either by itself or when considered with the prior evidence, would provide a basis for making a different finding(s), the adjudicator was bound by such prior finding(s).

    The *Albright* decision concerning AR 94-2(4) changes the way such findings made in a final decision by an ALJ or the AC on a prior claim are considered in determining disability with respect to an unadjudicated period involved in a subsequent claim. Rather than adopting prior ALJ or AC findings as in *Lively*, the *Albright* ruling directs adjudicators to consider prior ALJ or AC findings as evidence and to give any such finding appropriate weight in light of all relevant facts and circumstances, in adjudicating the subsequent claim. The Albright ruling provides factors to consider in determining the weight to be given such a prior finding.

    When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as:

Regarding Claimant's manipulative limitations, the ALJ found that Claimant's hand manipulative limitations had improved with treatment since the prior ALJ decision.    At the time of the prior ALJ's decision, Claimant was freshly postoperative.  Since the ALJ order dated March 23, 2012, Claimant did not complain about problems with her hands (Tr. at 63).  On approximately July 11, 2013, State agency reviewing physician, Curtis Withrow, M.D., assessed Claimant to have no manipulative limitations (Tr. at 152).  At an independent disability examination on September 10, 2013, by State agency physician, Serafino S. Maducdoc, M.D., Claimant did not include problems with her hands in her list of chief complaints (Tr. at 347-352).  Dr. Maducdoc's September 10, 2013, examination stated that Claimant had no deformities in her extremities (Tr. at 349). Claimant's manipulation was "normal" and "fine." (*Id.*)  The examination reported that Claimant's "[r]ange of motions of the shoulder, elbows, wrists and knees are normal."  Moreover, on January 26, 2015, Claimant's treating physician Jessica F. Swank, M.D., removed bilateral carpal tunnel syndrome from Claimant's list of conditions and noted that the condition had been "resolved" (Tr. at 553).  Pursuant to AR 00-1(4), the ALJ did not commit error in finding Claimant "could frequently handle and finger performing gross and fine manipulation bilaterally"

The opinions of Dr. Newell and Ms. Carte are based upon Claimant's own statements. A treating physician's statement that reflects the claimant's own statements more than the professional's judgment and insight, is hardly a treating source's statement at all.  *See e.g.*, *Maxwell v. Astrue*, ,2011 WL 2940701, at *4 (C.D. Cal. July 20, 2011) (the ALJ properly discounted a

---

1. Whether the fact on which the prior finding is based in subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition;
2. The likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and
3. The extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim. See SSA – POMS[6] DI 52715.001 General Information on the Albright Acquiescence Ruling (AR).

physician's disability form that was "based on what Plaintiff told him as they completed the form together during an appointment"). *Craig*, 76 F.3d at 590 n.2 (the fact that a physician observes a patient complaining to him of a subjective symptom does not transform his/her observations into clinical evidence).

Furthermore, the check box form completed by Dr. Newell and Ms. Carte contained little evidentiary support and few explanations. Ms. Carte, a nurse practitioner, filled out Claimant's Medical Assessment of Ability To Do Work-Related Activities (Physical) form. Dr. Newell signed the form after it was completed by Ms. Carte, however, Claimant testified at the hearing that she had "never seen Dr. Newell" (Tr. at 82). For the reasons stated above, the ALJ did not commit an error when he gave no weight to the opinions of Dr. Newell and Ms. Carte.

The ALJ in the present case considered the prior ALJ's assessment (Tr. at 60). However, in light of the new evidence before the ALJ, the ALJ was not required to agree with the prior ALJ's findings. New evidence demonstrates that some of Claimant's conditions and limitations had improved, while others had diminished.

<u>Limitations Supported By the Evidence</u>

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269,

1276 (3d Cir. 1987).  Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983).  The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record.  *See Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. Feb. 7, 2003) (citing  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W.Va. Mar. 7, 2014);  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (holding that hypotheticals to VEs need not credit every symptom alleged by the claimant, only those that are "medically established"); *Jones v. Barnhart*, 364 F.3d 501, 506-07 (3d Cir. 2004) (holding that, while ALJs may pose multiple hypotheticals, they need only credit those that are consistent with the evidence of record).  The ALJ is not required to adopt VE testimony in response to limitations that are not supported by the record.  *Youkers*, 2014 WL 906484 at *11.  *See also Parker v. Colvin*, 2013 WL 4748409 (W.D.N.C. Sept.4, 2013) ("[T]he fact that the Vocational Expert ("VE") responded to a hypothetical posed . . . which was not consistent with the ALJ's RFC determination is of no consequence.").

The ALJ reasonably found that based on the testimony of the VE, Claimant is capable of making a successful adjustment to work that exists in significant numbers in the national economy (Tr. at 63).  The ALJ included credibly established limitations in the hypothetical question to the

VE at the hearing.  Accordingly, this Court recommends that the presiding District Judge find that ALJ's decision is supported by substantial evidence.

Conclusion

The ALJ did not fail to include a sit-stand limitation in Claimant's current residual functional capacity.  Likewise, the ALJ did not fail to include a limitation for no more than occasional fine manipulation with Claimant's left hand.  The ALJ found that Claimant retained the residual functional capacity to perform a range of sedentary work with no more than frequent handling or fingering with both hands, with additional limitations on interpersonal contact, environmental exposures and postural movements.  Although the present ALJ afforded significant weight to the prior ALJ's findings, he did not adopt them completely.  Claimant's RFC limitations given by the ALJ are supported by substantial evidence on the record, including new evidence that was not before the previous ALJ.  Additionally, the ALJ did not err in giving no weight given to the opinions of Dr. Newell and Ms. Carte.  The ALJ's findings are supported by substantial evidence on the record.

Accordingly, for the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner, **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr..  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within

which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   July 18, 2017

Dwane L. Tinsley
United States Magistrate Judge